IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

```
ROLINDA WHALEY, on behalf of      *
Herself and all others             *
Similarly situated,                *
                                   *
        Plaintiff,                 *
                                   *
        v.                         *
                                   *
BAY VIEW LAW GROUP, PC; US DEBT    *
RELIEF CENTER; JEDEDIAH            *
THURKETTLE, individually;          *
DOUGLAS A. CROWDER,                *     CV 114-050
individually; JAMES COMEAUX,       *
individually; EFA PROCESSING,      *
L.P.; KENNETH TALBERT,             *
individually; PAUL F. BOYD,        *
individually; PHILIP DANEMAN,      *
individually; DOUGLAS WILLIAMS,    *
individually; MANAGEMENT           *
RESOURCES OF AMERICA; and          *
ROBERT G. AINSWORTH,               *
individually,                      *
                                   *
        Defendants.                *
```

## O R D E R

Presently pending before the Court is Plaintiff Rolinda Whaley's ("Whaley") Motion to Remand.[1] (Doc. 14.) Defendants Robert G. Ainsworth and Management Resources of America (collectively, "MRA Defendants") timely removed this case to the United States District Court for the Southern District of

---

[1] This Court, upon request of the parties, entered an Order on March 7, 2014 staying all pending deadlines on earlier-filed motions until resolution of this motion to remand. (Doc. 13.)

Georgia, Augusta Division, from the Superior Court of Richmond County, Georgia pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Upon due consideration, the Court finds the MRA Defendants have not proved by a preponderance of the evidence that the amount in controversy is greater than $5 million. The remand motion is hereby **GRANTED**.

## I. BACKGROUND

This consumer class action arises out of alleged violations of the Georgia Debt Adjustment Act ("GDAA"), O.C.G.A. § 18-5-1 et seq., by Texas- and California-based "debt settlement" companies and their respective owners or agents. (Doc. 1, Ex. A ("Pl.'s Am. Compl."), ¶¶ 1, 3-13, 24.) Plaintiff Whaley alleges that at a point when she was experiencing personal financial troubles to the tune of $31,000, Defendants contacted her through a targeted marketing scheme. (Id. ¶¶ 27, 30.) Defendants represented to Whaley that they would negotiate with her creditors to lower her interest rates and principal balance, culminating in resolution of her debts for forty (40) to sixty (60) cents on the dollar. (Id. ¶ 28.) Defendants further represented that they had ample experience and historical success achieving such results for other customers, which allegedly was materially false. (Id.) Although Whaley does not describe the nature of the services she actually received or from which Defendants she received them, Whaley asserts that Defendants charged, accepted, and wholly retained $669 in fees.

2

(Id. ¶¶ 31, 32.) This amount, as a percentage of the total monthly funds distributed to Whaley's creditors, exceeds the 7.5 percent ceiling set forth in O.C.G.A. § 18-5-2. (Id. ¶¶ 31, 32.) Whaley alleges that on average, in fact, Defendants collected fees reaching 40 percent of the total monies Georgia residents paid during the course of their debt settlement programs. (Id.)

Plaintiff Whaley filed her initial complaint in the Superior Court of Richmond County, Georgia, on August 8, 2013. (Doc. 1, at 2 n.2.) On December 12, 2013, Whaley recast her complaint to include the MRA Defendants as parties. (Pl.'s Am. Compl. ¶¶ 12, 13.) According to the Amended Complaint, Whaley brings claims individually and on behalf of the class — "[a]ll persons who, while residing in the State of Georgia, received Debt Settlement and/or Debt Adjusting services from [Defendants], and from whom any of the Defendants accepted, either directly or indirectly, any charge, fee, contribution, or combination thereof" — for violations of the GDAA and negligent misrepresentation. (Id. ¶¶ 36, 53-69.) In addition to class certification, Whaley seeks (1) compensatory damages, including the statutory relief provided by the GDAA; (2) an order for equitable relief that requires Defendants to cease charging unlawful fees and to disgorge unlawfully collected funds, (3) an order freezing Defendants' assets, and (4) the expenses of litigation, including attorney's fees. (Id. § VII.)

3

On February 18, 2014, the MRA Defendants timely filed a Notice of Removal to this Court pursuant to 28 U.S.C. § 1446(b), contending that jurisdiction was appropriate because the action qualified as a "mass action" under CAFA. (Doc. 1, ¶¶ 4, 7.) Whaley filed the instant motion to remand on March 4, 2014, contending that removal was improper because the MRA Defendants have not proved that the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. According to Whaley, the Amended Complaint and additional communications between the parties are clear that the amount in controversy is no more than $3.16 million. As such, Whaley further requests that the Court grant her attorney's fees incurred as a result of this request to remand.

## II. LEGAL STANDARD

Federal courts are of limited jurisdiction and thus may only hear a case if authorized to do so by federal law or the Constitution. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). CAFA confers upon the federal courts jurisdiction over class actions in which (1) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; (2) the number of proposed class members is not less than 100; (3) "minimal diversity" is met, or any member of the proposed plaintiff class is a citizen of a state different from

4

any defendant; and (4) common questions of law or fact exist among the plaintiffs' claims. 28 U.S.C. § 1332(d)(2); Thomas v. Bank of America Corp., 570 F.3d 1280, 1282 (11th Cir. 2009). The only jurisdictional disagreement between the parties in this matter is whether Defendants have proven CAFA's amount in controversy requirement such that removal was proper.

A defendant, as the party removing the case to the district court, bears the burden of proof with regard to establishing federal jurisdiction. Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006). "[R]emoval from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 754 (11th Cir. 2010). "Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." Id.; see also Lowery v. Alabama Power Co., 483 F.3d 1184, 1187 (11th Cir. 2007). In assessing whether the defendant has met its burden, "the court may consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letter submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied." Pretka, 608 F.3d at 754. This evidence may be "combined with reasonable

5

deductions, reasonable inferences, or other reasonable extrapolations." Id. "[N]either the defendants nor the court may speculate," however, and "the existence of jurisdiction should not be divined by looking to the stars." Lowery, 483 F.3d at 1215. Consequently, all doubts about the propriety of removal should be resolved in favor of remand. King v. Gov't Emps. Ins. Co., No. 13-14794, 2014 WL 4357480, at *3 (11th Cir. Sept. 4, 2014) (citing Miedema v. Maytag Corp., 450 F.3d 1322, 1328-29 (11th Cir. 2006)).

## III. DISCUSSION

The MRA Defendants offered three types of evidence in order to carry their burden of establishing, by a preponderance of the evidence, that the value of the proposed class's claims exceeds $5 million: (1) Whaley's Amended Complaint; (2) the sworn declaration of Eric C. Fisher, counsel for the MRA Defendants; and (3) the sworn declaration of Stefanie Anne Espinola, an executive assistant at MRA who "provides back-end support for the companies with which MRA works." (Doc. 1, Exs. A, B, & C.) Each item was submitted in conjunction with the Notice of Removal. The MRA Defendants assert that the $5 million amount in controversy is satisfied because (1) the statutory fines of the putative class — which is "predictably larger than 384 members" — exceed $1.92 million; (2) the unlawful fees in controversy exceed $2 million, not the "understated" figure of

6

$1.24 million assessed by Whaley; (3) attorney's fees and expenses of litigation must be included at a contingency rate of 33 percent; and (4) Whaley's demand for "disgorgement" of "all monies" in its prayer for relief is "expressly targeting [non-fee] monetary relief *over and above*" that which is recoverable under the GDAA, thereby adding an additional $1.86 to $3 million to the total. (Doc. 1, ¶¶ 22-26; Doc. 14, at 5-11.)

Whaley responds that the MRA Defendants have not carried their burden under CAFA to establish federal diversity jurisdiction over this class action. Specifically, she points to the limiting language asserted in her complaint — that it only seeks "a total amount of damages to the named Plaintiff of *less than* $75,000.00 individually, and Plaintiff Class Members of *less than* $5,000,000.00" — and that her counsel openly shared that the 384 class members' claims total only $3.16 million. (Doc. 11, at 4, 5 (emphasis added).) Whaley also contests Defendants' "tortured" characterization of her prayer for injunctive relief, namely the inclusion of non-fee, non-GDAA damages. (Id. at 5-8.) Lastly, Whaley "merely request[s] attorney's fees [be] paid out of the common fund for recovery for the class." (Id. at 8.) The Court addresses each category of potential recovery in turn.

A.  Statutory Fines

The GDAA provides that "[a]ny person who engages in debt adjusting in violation of the provisions of [O.C.G.A. § 18-5-2] shall further be liable to the debtor in an amount equal to the total of all fees, charges, or contributions paid by the debtor plus $5,000.00." O.C.G.A. § 18-5-4(b)(2). In the Amended Complaint, Whaley asserts that Defendants, as a collective group, provided debt adjustment services "to over 300 residents of the State of Georgia since July 1, 2003." (Pl.'s Am. Compl. ¶ 41.) Whaley's counsel later clarified in an e-mail to Eric C. Fisher, counsel for the MRA Defendants, that the putative class includes 384 known members. (Doc. 1, Ex. C.) Therefore, the parties calculate the minimum anticipated recovery of statutory fines to be $1.92 million.[2] (Doc. 1, ¶ 22; Doc. 11, at 5.)

The MRA Defendants, however, contend "the alleged class is almost certainly bigger than 384 members." (Doc. 14, at 5.) According to the declaration of Stefanie Anne Espinola, MRA alone performed debt adjustment services for approximately 190 individuals. (Doc. 1, Ex. C, ¶ 5.) Moreover, the MRA Defendants argue that Whaley's calculation of 384 putative plaintiffs is likely "outdated by more than a year" because Whaley's counsel obtained the number in connection with a prior lawsuit that limited recovery to a single service provider —

---

[2] $1,920,000 is the $5,000 statutory fine multiplied by 384, the size of the class as provided by Whaley.

8

Global Client Solutions — through only February 7, 2013. (Doc. 14, at 6.)

The question of how many customers received debt adjustment services from MRA and the other defendants is an important issue, not only because of CAFA's numerosity requirement — which plainly is met here — but also because individual claims must be aggregated to determine whether they meet the $5 million threshold. Generally, a document or declaration provided by a defendant that reveals the identity or quantity of prospective class members over which the defendant exercised control is sufficient to shed light on the value of plaintiffs' claims. See Pretka, 608 F.3d at 771 (finding sufficient and non-speculative the CFO's declaration that a developer collected more than $5 million in condominium purchase deposits because, having access to the records, the CFO "performed the ministerial determination" that the complaint called for"). Unlike Pretka, of course, the claim value brought forth by the MRA Defendants does not cross the $5 million threshold standing alone, and thus the Court must look to other evidence.

The Court acknowledges the value of the MRA Defendants' "hard data," but at the same time, the MRA Defendants appear to hedge their position as to whether the 190 additional individuals to whom they provided debt adjustment services are

9

actually entitled to relief so as to be included in the class.[3] See Cato v. Serv. Corp. Int'l, 833 F. Supp. 2d 1324, 1330 (11th Cir. 2011) (finding "most important[]" in its decision to remand the defendants' failure to submit any evidence suggesting that its 507 employees had colorable claims within the described classes and that those employees' damages would be factually similar to those alleged by the named plaintiffs in a class action for unpaid wages). Additionally, they indicate there may be overlap of claims among Defendants.[4] (Doc. 1, Ex. C, ¶ 5.) The MRA Defendants further admit they do not have access to the information necessary to provide the Court with a more accurate global estimate of putative class members. (Doc. 14, at 6.) Neither in the Notice of Removal nor briefs, in fact, do the MRA Defendants explicitly request that the Court add their 190 customers to Whaley's asserted 384 class members for the purpose of the amount in controversy calculation, only that the Court extrapolate to an unknown degree to account for three other corporate defendants and later-serviced Global Client Solutions customers. (Doc. 1, at n.6; Doc. 14, at 5-6.)

---

[3] Paragraph 5 of Stefanie Anne Espinola's declaration states that "MRA performed services for approximately 190 individuals who *may* be included in the putative 'class,'" according to her understanding to the Amended Complaint. (Doc. 1, Ex. C, ¶ 5 (emphasis added).)

[4] Paragraph 6 of Stefanie Anne Espinola's declaration indicates that the 190 individuals to whom MRA provided debt adjustment services paid approximately $1 million in fees "to a combination of MRA and *one or more of the other Defendants* identified in the Complaint." (Doc. 1, Ex. C, ¶ 6 (emphasis added).)

10

The class may in fact be larger than 384 members, but in the absence of more specific evidence, the Court will not engage in guesswork to divine its size, a figure that critically serves as the basis for all other calculations in this case. Thomas v. Bank of Am. Corp., No. 3:08-CV-68CDL, 2009 WL 88450, at *3 (M.D. Ga. Jan. 12, 2009), aff'd, 570 F.3d 1280 (11th Cir. 2009). As the Court cannot even articulate a range of statutory fines owed to a nebulous class, it limits its calculations to include the 384 members as asserted by Whaley. Accordingly, the value of recoverable statutory fines is capped at $1.92 million for purposes of this motion.

**B. Unlawful Fees in Controversy**

Although Whaley proffered no estimate in the Amended Complaint of the total fees charged in violation of O.C.G.A. § 18-5-2 and paid by members of the putative class,[5] Plaintiff's counsel later represented to the MRA Defendants that the total value of the suit is $3.16 million. (Doc. 1, Ex. B.) $1.24 million of this amount constitutes wrongfully accepted fees, or roughly $3,229 per class member.[6] The MRA Defendants contend this estimate is understated. As they provided debt adjustment services to approximately 190 putative plaintiffs who paid "a

---

[5] Whaley only identified that she paid Defendants $669 and that Defendants retained the entire amount as a fee. (Pl.'s Am. Compl. ¶¶ 31, 32.)

[6] The MRA Defendants calculate $1.24 million by subtracting $1.92 million in statutory fines from $3.16 million, the total estimated value of the suit. See supra Section III.A.

11

little over" $1 million in fees, it contends the average should be higher, or roughly $5,263 per class member. (Doc. 1, ¶ 22 & Ex. C, ¶ 6; Doc. 14, at 7.)

The Court finds the MRA Defendants have not shown by a preponderance of the evidence - or by any evidence - that the sums allegedly owed to the 190 putative plaintiffs to whom MRA provided services are similar to those of the rest of the class such that $5,263 per member is the better, proper estimate of "fee" damages. The MRA Defendants argue that it is "more logical to use the hard data" it has provided the Court because Whaley has not provided "any supporting documentation to show how her counsel determined that 384 putative class members paid *only* $1,240,000 in fees." (Doc. 14, at 7.) Simply, Whaley and her counsel have no duty to do so at this stage. It is the *defendants'* burden, despite the narrow universe of information available to them at the point of a § 1446(b) removal, to establish that claims are "factually, not just legally, similar" when extrapolating values between named and unnamed parties for amount in controversy calculations. Pretka, 608 F.3d at 769. The typicality element of a class action alone does not permit such an inference. Id. Thus, considering the only evidence before it — the substantial disparity between Whaley's individual claim as pled ($669) and the parties' estimates

($3,229 and $5,263) — the Court declines to take up the MRA Defendants' position that the highest is the best.[7]

**C. Attorney's Fees**

Generally, attorney's fees are not included in the amount in controversy calculation, but "[w]hen a statutory cause of action entitles a party to recover reasonable attorney fees, the amount in controversy, for purposes of diversity jurisdiction, includes consideration of those fees." <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069, 1079 (11th Cir. 2000). The MRA Defendants contend that the Court should include a potentially substantial award of attorney's fees in calculating the amount in controversy, as Whaley and the putative class may seek recovery of such fees as "prevailing plaintiffs" under the Georgia Fair Business Practices Act of 1975 ("FBPA"), O.C.G.A. § 10-1-390 et seq. (Doc. 1, ¶ 20; Doc. 14, at 9-10.) The GDAA sets forth that "a violation of Code Section 18-5-2 . . . shall additionally be a violation of . . . the [FBPA]." O.C.G.A. § 18-5-4(d). The FBPA statute then provides that "[i]f the court finds in any action that there has been a violation, . . . the person injured by such violation shall, in addition to other relief . . . and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and expenses

---

[7] In any case, adding this category of relief at either level of recovery-per-plaintiff to the $1.92 million in estimated statutory fines remains below the amount-in-controversy threshold of $5 million.

13

of litigation incurred in connection with said action." O.C.G.A. § 10-1-399(d). Assuming Whaley's counsel accepted the representation pursuant to a contingency arrangement, the MRA Defendants urge the Court to include at least $1,052,280[8] to the amount in controversy total. (Doc. 1, ¶ 26.)

The Court declines to include any proposed amount. As the Amended Complaint reflects, Whaley has not pursued a claim under the FBPA. (See Pl.'s Am. Compl. ¶¶ 53-69.) Therefore, that a proven violation of the GDAA is *ipso facto* a violation of the FBPA is of no moment to the issue of attorney's fees in this case. Clearly, such fees will not be awarded automatically pursuant to the FBPA when a claim under that statute is not before the court.

The MRA Defendants counter by citing <u>Standard Fire Insurance</u> for the proposition that Whaley, as the named plaintiff, cannot stipulate prior to class certification that the class will not seek damages — here, statutorily-awarded attorney's fees — so as to prevent removal. <u>Standard Fire Ins. Co. v. Knowles</u>, 133 S. Ct. 1345, 1349 (2013). Indeed, unless the proffered stipulation is binding and conclusive as to all absent class members, Whaley "does not speak for those he purports to represent." <u>Id.</u> at 1348-49.

The Court finds, however, that Whaley is not *stipulating* anything. Plaintiffs are masters of their own complaints.

---

[8] $1,052,280 is 33.3% of $3.16 million, the value of the suit as assessed by Whaley.

14

Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). It is Whaley's prerogative, whether well or ill founded, not to seek the favorable relief afforded by the FBPA to GDAA litigants. Another class member certainly could intervene with an amended complaint to include an FBPA claim, and the Court might permit the action to proceed with a new representative, but Whaley is under no duty to frame her case in that manner. See Standard Fire, 133 S. Ct. at 1349. The Court thus concludes that statutory attorney fees may not be considered in the aggregate to establish the requisite amount in controversy.

D. **Equitable Relief for "Disgorgement"**

Finally, the MRA Defendants contend that an additional $1.86 million in non-fee money should be counted in the jurisdictional analysis.[9] The MRA Defendants point to the prayer for relief in Whaley's Amended Complaint, which in part seeks "temporary, preliminary and/or [a] permanent order disgorging the Defendants of *all money collected*." (Pl.'s Am. Compl. § VII, ¶ f (emphasis added).) They contend "all money collected" includes the substantive payments held in escrow by Defendants for distribution to creditors, not merely the violative "fees" each defendant charged for services rendered. (Doc. 14, at 7-9.) In support of this argument, the MRA

---

[9] The MRA Defendants reverse calculated this figure: if, as Whaley asserts, the total fees unlawfully retained by Defendants at a rate of 40 percent equal $1.24 million, then $1.86 million represents the remaining 60 percent collected by Defendants to be distributed to creditors. (Doc. 14, at 8.)

15

Defendants also point to Whaley's allegation in the pleadings that Defendants are liable to each plaintiff "in an amount equal to the total of *all fees, charges, or contributions paid.*" (Doc. 1, ¶ 24 (emphasis added).) They go as far to argue that the statutory terms "charges" and "contributions" refer to the money distributed to creditors "for other debt-related charges." (Id.; Doc. 14, at 7-9.) Viewing these two provisions together, they assert, "Plaintiff is expressly targeting monetary relief *over and above fines and fees recoverable under the GDAA.*" (Doc. 14, at 7.)

Apart from the fact that the MRA Defendants have not cited any legal authority in support of their interpretive position, "a district court need not . . . shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010) (internal citation omitted). What the MRA Defendants fail to admit is that the language of Whaley's Amended Complaint merely tracks the language of the statute and the relief the GDAA expressly affords. To give the MRA Defendants' interpretation credence would render nonsensical the GDAA's language prohibiting "charge[s], fee[s], [or] contribution[s] . . . in excess of 7.5 percent of the amount paid monthly . . . for distribution to creditors."[10] The Court

---

[10] If the Court were to interpret "charges" and "contributions" as the MRA Defendants suggest, the GDAA would prohibit "distributions to creditors, fee[s], [or] distributions to creditors . . . in excess of 7.5 percent of the

16

therefore will not consider the proposed $1.86 million in "non-fee money collected" to establish the requisite amount in controversy.

## IV. CONCLUSION

Although "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish *all* uncertainty about it," this Court concludes that there remains great uncertainty about the number of class members and, consequently, the amount in controversy. See Pretka, 608 F.3d at 754 (emphasis added). By the Court's calculation, the MRA Defendants have failed to prove that the amount in controversy more likely than not exceeds $3,940,992, at best.[11] This uncertainty must be resolved in favor of remand.

For the reasons set forth above, Plaintiff Whaley's Motion for Remand (Doc. 11) is **GRANTED**. The Clerk is **DIRECTED** to terminate all other pending motions (Docs. 7 & 8) and remand the case to the Superior Court of Richmond County, Georgia. No costs or fees are awarded.[12]

---

amount paid monthly . . . for distribution to creditors." See O.C.G.A. § 18-5-2.

[11] $3,940,992 is $1,920,000 in statutory fines plus $2,020,992 in charges, fees, and contributions that Defendants are alleged to have collected unlawfully at the more favorable rate of $5,263 per class member. See supra Part III.B.

[12] The Supreme Court has explained that "[a]bsent unusual circumstances, courts may award fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Even though this Court disagrees with the MRA Defendants' grounds for removal, the Court does not find that they "lacked an objectively reasonable basis" in pursuing it.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of September, 2014.

/s/ J. Randal Hall
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

Therefore, the Court declines to exercise its discretion to award costs and fees to Whaley.

18